TOMIO B. NARITA (SBN 156576)
tnarita@snllp.com
R. TRAVIS CAMPBELL (SBN 271580)
tcampbell@snllp.com
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
Telephone: (415) 283-1000
Facsimile:   (415) 352-2625

Attorneys for Defendants,
Citibank, N.A., successor in interest to
Citibank (South Dakota), N.A.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| BYRON D. DAUGHERTY,<br><br>        Plaintiff,<br><br>    vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; EQUIFAX INFORMATION SERVICES LLC; CITIBANK (SOUTH DAKOTA), N.A.; and DOES 1 through 30, inclusive,<br><br>        Defendants.<br>_____ | CASE NO.: C 11-01285-SBA<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION BY CITIBANK, N.A., SUCCESSOR IN INTEREST TO CITIBANK (SOUTH DAKOTA), N.A.; MEMORANDUM IN SUPPORT**<br><br>[Filed concurrently with Declaration of Elizabeth S. Barnette; Request For Judicial Notice; Proposed Order lodged concurrently]<br><br>Date:        January 24, 2012<br>Time:        1:00 p.m.<br>Location:    Courtroom 1<br><br>The Honorable Sandra B. Armstrong<br><br>Action Filed: March 16, 2011<br>Trial Date:    None |

) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO THE CLERK OF THE ABOVE ENTITLED COURT:

PLEASE TAKE NOTICE that on January 24, 2012, at 1:00 p.m. or as soon thereafter as the matter may be heard in Courtroom 1 of the above captioned Court, before the Honorable Sandra B. Armstrong, located at Oakland Courthouse, 1301 Clay Street, Oakland, California, 94612, defendant Citibank, N.A., successor in interest to Citibank (South Dakota), N.A. ("Citibank" or "Defendant") will and hereby does move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. Section 1, *et seq*. ("FAA"), for an Order compelling the plaintiff Byron D. Daugherty ("Daugherty" or "Plaintiff") to arbitrate the claims presented in this action. Defendant further seeks an order staying this action as against Citibank pending completion of arbitration proceedings.

This Motion is made on the grounds that a valid, enforceable and irrevocable agreement to arbitrate exists between the parties that encompasses the claims brought by Daugherty; that, pursuant to the FAA, upon election by either party, Daugherty must arbitrate his claims as required by the arbitration agreement in Daugherty's credit card agreement; that South Dakota law governs the parties' relationship and likewise mandates enforcement of the arbitration agreement; and that the instant action should be stayed as against Citibank pending completion of the arbitration.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum in Support, the Declaration of Elizabeth S. Barnette, all papers and pleadings on file regarding the Complaint and upon such other and further evidence and argument as may be presented to the Court in connection with this Motion.

Dated:  August 19, 2011                         SIMMONDS & NARITA, LLP


By:/s/R. Travis Campbell_____
R. Travis Campbell
Attorneys for Defendants
Citibank, N.A., successor in interest to
Citibank (South Dakota), N.A.

- i -

1

2
# TABLE OF CONTENTS

3
I.    INTRODUCTION………………...……………………………………..1

4
II.   STATEMENT OF FACTS……………………………..……………..…..2

5
      A. The Instant Action……………………………………………..…2

6
      B. Plaintiff's Account And The Binding Arbitration Agreement……...3

7
III.  ARGUMENT………………………………………………………....…4

8
      A. Plaintiff's Claims Are Subject to Binding Arbitration Pursuant To
9        The Arbitration Agreement Governing The Account………………4

10
         1.  Under the FAA, This Court Must Compel Arbitration
11           Pursuant To The Express Terms Of The Arbitration
             Agreement………………………………………………......4

12
         2.  The Arbitration Agreement In The Card Agreement is
             Valid and Enforceable…………………………………………8

13
         3.  Plaintiff's Claims Fall Squarely Within The Scope Of
14           The Arbitration Agreement……………………...………10

15
      B. This Action Must Be Stayed As Against Citibank…………………12

16
IV.  CONCLUSION……………………………………………….………..13

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)………………………………………………..………5

*AT&T Mobility LLC v. Concepcion*,
___U.S. __, 131 S. Ct. 1740 (Apr. 27, 2011)………………………...………6,7

*AT&T Tech., Inc. v. Communications Workers of Am.*,
475 U.S. 643 (1986) …………………………………………………..10,11

*Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*,
585 F.2d 39 (3rd Cir. Pa. 1978) …………………………...…………….……11

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) …………………………………………………………5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) …………………………………………7

*Collins & Aikman Products Co. v. Building Systems, Inc.*,
58 F.3d 16 (2d Cir. 1995) …………………………….…………………10

*Collins v. Burlington N. R. Co.*,
867 F.2d 542 (9th Cir. 1989) …………………………………………11,12

*Conroy v. Citibank, N.A.*,
10-CV-04930 SVW (AJWx) (C.D. Cal. Jul. 22, 2011) …………………..…..1,8

*Countrywide Home Loans, Inc. v. Mortgage Guaranty Ins. Corp.*,
__ F.3d __, 2011 WL 2373055 (9th Cir. Jun. 15, 2011) …………………..……12

*Dumanis v. Citibank (South Dakota), N.A.*,
2007 WL 3253975 (W.D.N.Y. 2007) …………………………..…………8

*Eaves-Leonos v. Assurant, Inc.*,
2008 WL 80173 (W.D. Ky. Jan. 8, 2008) …………………..……………8

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002) ……………………………………………………7

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ……………………………………………………8

1

*Fleet Tire Serv. v. Oliver Rubber Co.*,
118 F.3d 619 (8th Cir. 1997) ……………………………………………………11

2

3

*Gay v. Creditinform*,
511 F.3d 369 (3d Cir. 2007) …………………………….…………7

4

5

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20, 26 (1991)…...……………………………………………12

6

7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ……………………………………………….…………7

8

9

*Lowman v. Citibank (South Dakota), N.A.*,
2006 WL 6108680  (C.D. Cal. Mar. 26, 2006) ………………...…………...………8,9

10

*Lozano v. AT&T Wireless Srvs., Inc.*,
504 F.3d 718, 725 (9th Cir. 2007) …………………………...………12

11

12

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995) …………………………………………….…….…6

13

14

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*,
858 F.2d 825 (2d Cir. 1988) …………………………….…….…10

15

16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ………………………………………...……7,12

17

18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ……………………………………………..5,7

19

20

*Perry v. Thomas*,
482 U.S. 483 (1987) …………………………………………5

21

22

*Preston v. Ferrer*,
552 U.S. 346 (2008) ………………………………………7

23

24

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ……………………………………………5

25

26

*Shearson/American Express, Inc. v. McMahon*,
482 U.S. 220 (1987) ……………………………...……7,12

27

28

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) …………………………………………………………7

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
__ U.S. __, 130 S. Ct. 1758 (Apr. 27, 2010) ………………………………..…….…6,7

*Taylor v. Citibank USA, N.A.*,
292 F. Supp. 2d 1333 (M.D. Ala. 2003) …………………………………………8

*Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) …………………………………………………………....5,6,7

*Yaqub v. Experian Info. Solutions, Inc., et al.*,
No. CV11-2190-VBF (FFMx) (C.D. Cal. Jun. 10, 2011) ………………..……...1,8,9

### STATE CASES

*Dinsmore v. Piper Jaffray, Inc.*,
593 N.W.2d 41 (S.D. 1999)………………………………..……………….…….8,10

*Hot Springs v. Gunderson's, Inc.*,
322 N.W.2d 8 (S.D. 1982) ………………………………………………………10

*L.R. Foy Constr. Co. v. Spearfish School District*,
341 N.W.2d 383 (S.D. 1983) ……………………………………………………9

*Nedlloyd Lines B.V. v. Superior Court*,
3 Cal. 4th 459 (1992) ……………………………………………………………8

*Rossi Fine Jewelers, Inc. v. Gunderson*,
648 N.W.2d 812 (S.D. 2002) ……………………………………………………9

*Tjeerdsma v. Global Steel Bldgs., Inc.*,
466 N.W.2d 643 (S.D. 1991) ……………………………………………..……9

*Washington Mut. Bank, FA v. Superior Court*,
24 Cal. 4th 906 (2001) …………………………………………………………8

### FEDERAL STATUTES

Federal Arbitration Act,
    9 U.S.C. § 1, *et seq.*…………………………………………………….....1
    9 U.S.C. § 2……………………………………………………………...…..5
    9 U.S.C. § 3……………………………………………………….............12

Fair Credit Reporting Act,
    15 U.S.C. 1681s-2(b) ……………………………………….…………..2

- v -

DAUGHERTY V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL. (CASE NO. C 11-01285-SBA)
CITIBANK'S MOTION TO COMPEL ARBITRATION; MEMO IN SUPPORT

1

## STATE STATUTES

2

California Consumer Reporting Agencies Act,
   Cal. Civ. Code § 1785.25...................................................................................2

3

4

## OTHER AUTHORITIES

5

South Dakota Codified Laws
6    § 54-11-9................................................…………………………..…9

7

South Dakota Attorney General Opinion ………………………………………...10

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAUGHERTY V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL. (CASE NO. C 11-01285-SBA)
CITIBANK'S MOTION TO COMPEL ARBITRATION; MEMO IN SUPPORT

**MEMORANDUM IN SUPPORT**

**I.    INTRODUCTION**

Defendants Citibank, N.A., successor in interest to Citibank (South Dakota), N.A.[1] ("Citibank" or "Defendant") seeks through this Motion to Compel Arbitration and Stay Action (the "Motion") an order compelling arbitration of the claims asserted here by plaintiff Byron D. Daugherty ("Daugherty" or "Plaintiff").  The Motion is made pursuant to the binding arbitration agreement (the "Arbitration Agreement") contained in Daugherty's credit card agreement with Citibank, which governs Daugherty's credit card account (the "Account") and which encompasses all of the claims asserted against Citibank in this case.

As explained in this Motion, the Arbitration Agreement is a valid and enforceable agreement to arbitrate under South Dakota law (which applies here pursuant to a choice-of-law provision in the parties' credit card agreement), and it completely encompasses Daugherty's claims, all of which relate to the Account.  The Arbitration Agreement expressly requires that Daugherty's claims be arbitrated upon election by either party, and it must be enforced pursuant to the Federal Arbitration Act, 9 U.S.C. Section 1, *et seq.* ("FAA"), and the liberal policy favoring the enforcement of arbitration agreements.  Indeed, two California federal district courts recently granted motions to compel arbitration in cases involving the same Citibank Arbitration Agreement.  *See Conroy v. Citibank, N.A.*, 10-CV-04930 SVW (AJWx), *slip op.* at 5-8 (C.D. Cal. Jul. 22, 2011). *See* Request For Judicial Notice In Support Of Motion To Compel Arbitration And Stay Action ("RJN"), Ex. A; *Yaqub v. Experian Info. Solutions, Inc., et al.*, No. CV11-2190-VBF (FFMx), *slip op.* at 5-6 (C.D. Cal. Jun. 10, 2011).  *See* RJN Ex. B.

Accordingly, as expressly authorized under the Arbitration Agreement, Citibank has elected to transfer this case to an arbitral forum where the dispute can

---

[1]  Citibank (South Dakota), N.A. merged into Citibank, N.A. effective July 1, 2011. *See* Declaration of Elizabeth S. Barnette ("Barnette Decl."), ¶ 1.

1   proceed in a more efficient and expeditious manner.  Citibank respectfully requests
2   that the Court issue an Order compelling Daugherty to arbitrate his claims against
3   Citibank, and staying this case as against Citibank pending the arbitration.

4   **II.    STATEMENT OF FACTS**

5       **A.    The Instant Action**

6       On March 16, 2011, Daugherty filed this Complaint against Citibank.
7   Daugherty alleges that in June 2007, he entered into a written payment plan with
8   Citibank requiring that he make monthly payments to satisfy his delinquent Sears
9   credit card account ("Account").  *See* Complaint ¶ 15.  Although Daugherty does not
10  attach a copy of the "written payment plan," a copy of the June 20, 2007 letter he
11  references is attached to the accompanying Declaration of Elizabeth Barnette as
12  Exhibit 3.  As pertinent here, the letter states that "[t]he terms of your account
13  agreement not amended above will remain in effect."  Nevertheless, Daugherty
14  alleges that, although he supposedly complied with the terms of the payment plan
15  (Complaint, ¶¶ 16-18), Citibank purportedly furnished inaccurate information to
16  credit reporting agencies regarding the Account.  *Id.* ¶¶ 18-23, 43, 48.  Based on
17  these allegations, among others, Daugherty asserts three Counts against Citibank for
18  violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681s-2(b) (Count
19  IV), violation of the Cal. Civ. Code § 1785.25 (Count V), and negligence (Count VI).

20      Although Citibank denies any liability to Daugherty, there can be no dispute that
21  Daugherty's claims are related to the Account and his relationship with Citibank.
22  Moreover, Daugherty cannot disavow the terms of the Card Agreement governing
23  the Account, which is reiterated in the June 20, 2007 letter relied upon by Daugherty.
24  Accordingly, Daugherty's claims are clearly subject to arbitration, as discussed
25  below.

26
27
28

DAUGHERTY V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL. (CASE NO. C 11-01285-SBA)
CITIBANK'S MOTION TO COMPEL ARBITRATION; MEMO IN SUPPORT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B.    Plaintiff's Account And The Binding Arbitration Agreement

In or around September 2006, Daugherty opened the Account, a Sears-branded credit card, with Citibank.  *See* Declaration of Elizabeth S. Barnette ("Barnette Decl."), ¶ 4.  Like any other credit card account, the Account is subject to written terms and conditions reflected in a Card Agreement, as amended from time to time.  Attached to the Barnette Declaration as Exhibit 1 is an exemplar of the Card Agreement ("Card Agreement") that was sent to Daugherty after the Account was opened.  *Id.*  The Card Agreement provides:  "**Applicable Law**.  The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located."  *Id.*, Ex. 1, p. 14.

The Card Agreement contains an arbitration provision (the "Arbitration Agreement"), which provides that either party can elect mandatory binding arbitration.  *Id.*, ¶ 4, Ex. 1, pp. 11-12.  The Arbitration Agreement states in relevant part:

### ARBITRATION

***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.  IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION.  ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.  IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY.  ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.***

***Agreement to Arbitrate:***  Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

### Claims Covered

**What Claims are subject to arbitration?**  All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this

arbitration provision.  All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek.  This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. …

**Whose Claims are subject to arbitration?**  Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant, authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir assignee, or trustee in bankruptcy.

\*        \*        \*

**Broadest Interpretation.**  Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.  This arbitration provision is governed by the Federal Arbitration Act (the "FAA"). …

*See id*. (bolding in original, underlining added).  The Arbitration Agreement also includes terms:  (i) allowing for the parties to choose between nationally recognized arbitration firms: the AAA and the NAF; (ii) allowing for the reimbursement and/or advancement of arbitration fees; and (iii) excluding small claims court actions.  *Id.*, Ex. 1, pp. 12-13.

Because there is no dispute that Daugherty received the Arbitration Agreement and used the Account, the Arbitration Agreement should be enforced and the action stayed pending arbitration of Daugherty's claims.

## III.   ARGUMENT

### A.   Plaintiff's Claims Are Subject To Binding Arbitration Pursuant To The Arbitration Agreement Governing The Account

#### 1.   Under The FAA, This Court Must Compel Arbitration Pursuant To The Express Terms Of The Arbitration Agreement

- 4 -

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."). The United States Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967).[2]

The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490-91 (1987) (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'" (citations omitted)). The FAA's "primary purpose [is to ensure] that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Indeed, the United States Supreme Court recently confirmed that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740, 1748 (Apr. 27, 2011); *accord Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, __ U.S. __, 130 S. Ct. 1758, 1773 (Apr. 27, 2010); *Volt Info. Scis., Inc. v. Bd.*

---

[2] Here, there is no question that the FAA applies to this dispute because the credit card transactions at issue were made between Daugherty, who resides in California, and Citibank, a national banking association located in South Dakota. Barnette Decl., ¶1. The Arbitration Agreement explicitly states that "[t]his arbitration provision is governed by the [FAA]." *Id.*, ¶4, Ex. 1, p.12.

DAUGHERTY V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL. (CASE NO. C 11-01285-SBA)
CITIBANK'S MOTION TO COMPEL ARBITRATION; MEMO IN SUPPORT

1    *of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *Mastrobuono v.*

2    *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995).

3        As confirmed by the Supreme Court, the "overarching purpose of the FAA,

4    evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration

5    agreements according to their terms so as to facilitate streamlined proceedings."

6    *AT&T Mobility*, 131 S. Ct. at 1748.  By consenting to bilateral arbitration, the

7    "parties forgo the procedural rigor and appellate review of the courts in order to

8    realize the benefits of private dispute resolution: lower costs, greater efficiency and

9    speed, and the ability to choose expert adjudicators to resolve specialized disputes."

10   *Stolt-Nielsen*, 130 S. Ct. at 1775 (citations omitted).

11       "Underscoring the consensual nature of private dispute resolution . . . parties

12   are 'generally free to structure their arbitration agreements as they see fit.'"  *Id.* at

13   1774 (citations omitted).  Thus, "parties may agree to limit the issues subject to

14   arbitration [citation], to arbitrate according to specific rules [citation], and to limit

15   with whom a party will arbitrate its disputes [citation]."  *AT&T Mobility*, 131 S. Ct.

16   at 1748-49 (citations omitted).  Indeed, the "point of affording parties discretion in

17   designing arbitration processes is to allow for efficient, streamlined procedures

18   tailored to the type of dispute . . . .  And the informality of arbitral proceedings is

19   itself desirable, reducing the cost and increasing the speed of dispute resolution."  *Id.*

20   at 1749.  Ultimately, "[i]t falls to courts and arbitrators to give effect to these

21   contractual limitations, and when doing so, courts and arbitrators must not lose sight

22   of the purpose of the exercise: to give effect to the intent of the parties."  *Stolt-*

23   *Nielsen*, 130 S. Ct. at 1774-75; *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289

24   (2002).

25       Under the FAA, as consistently interpreted by the Supreme Court, arbitration

26   must be compelled where, as here:  (1) a valid, enforceable agreement to arbitrate

27   exists; and (2) the claims at issue fall within the scope of that agreement.  *See, e.g.,*

28

DAUGHERTY V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL. (CASE NO. C 11-01285-SBA)
CITIBANK'S MOTION TO COMPEL ARBITRATION; MEMO IN SUPPORT

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

An arbitration agreement governed by the FAA, like the Arbitration Agreement here,

is presumed to be valid and enforceable.  *See Shearson/American Express, Inc. v.*

*McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-*

*Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985).[3]   The FAA "establishes that, as a

matter of federal law, any doubts concerning the scope of arbitrable issues should be

resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25; *see also Gay v.*

*Creditinform*, 511 F.3d 369, 388-89, 394 (3d Cir. 2007) (quoting *Volt*, 489 U.S. at

479) (holding that "[a]n agreement to arbitrate is valid, irrevocable, and enforceable,

as a matter of federal law, 'save upon such grounds as exist at law or in equity for the

revocation of any contract'" (emphasis in original)).   Thus, it is well-settled that a

party resisting arbitration bears the burden of showing that the arbitration agreement

is invalid or does not encompass the claims at issue.  *Green Tree Fin. Corp.-Ala. v.*

*Randolph*, 531 U.S. 79, 92 (2000).

Applying these rules, California courts and numerous courts across the country

have consistently upheld and enforced virtually identical arbitration agreements

utilized by Citibank and its affiliates.  *See e.g., Conroy v. Citibank, N.A.*, 10-CV-

04930 SVW (AJWx), *slip op.* at 5-8 (C.D. Cal. Jul. 22, 2011) (*See* RJN, Ex. A);

*Yaqub v. Experian Info. Solutions, Inc., et al.*, No. CV11-2190-VBF (FFMx), *slip op.*

at 5-6 (C.D. Cal. Jun. 10, 2011) (*See* RJN, Ex. B); *Lowman v. Citibank (South*

*Dakota), N.A.*, 2006 WL 6108680  (C.D. Cal. Mar. 26, 2006); *Dumanis v. Citibank*

---

[3] The FAA preempts any state law impediments to enforcing arbitration agreements according to their terms, even under the guise of generally applicable contract principles.  *See AT&T Mobility*, 131 S. Ct. at 1752-53 (states may not superimpose judicial procedures on arbitration); *id.* at 1751 n.7, 1747 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.") (citing *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)); *Stolt-Nielsen*, 130 S. Ct. at 1774 ("'[P]arties are 'generally free to structure their arbitration agreements as they see fit.'"); *see also Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (striking down California law that sought to insulate certain issues from arbitration).

DAUGHERTY V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL. (CASE NO. C 11-01285-SBA)
CITIBANK'S MOTION TO COMPEL ARBITRATION; MEMO IN SUPPORT

*(South Dakota), N.A.*, 2007 WL 3253975, *3 (W.D.N.Y. 2007); *Eaves-Leonos v. Assurant, Inc.*, 2008 WL 80173 (W.D. Ky. Jan. 8, 2008); *Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333 (M.D. Ala. 2003).

<h2>2.    The Arbitration Agreement In The Card Agreement is Valid And Enforceable</h2>

The Card Agreement, which contains the Arbitration Agreement, is expressly governed by a South Dakota choice-of-law provision.[4]  Barnette Decl., Ex. 1, p. 14. While the FAA exclusively governs the enforceability of the Arbitration Agreement according to its terms, South Dakota law governs the determination of whether a valid agreement to arbitrate exists.  *Yaqub*, No. CV11-2190-VBF (FFMx), slip op. at 3-4 (holding that South Dakota law applied to Arbitration Agreement pursuant to choice-of-law provision in Card Agreement) (*See* RJN, Ex. B); *Lowman*, 2006 WL 6108680, *3 (same); *Dinsmore v. Piper Jaffray, Inc.*, 593 N.W.2d 41, 44 (S.D. 1999) (noting that, "the question of whether the parties entered into a valid agreement to arbitrate is a question for the court to determine applying state contract law principles"); *accord First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

Consistent with the terms of the Card Agreement here, South Dakota law expressly provides:

> The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and

---

[4] Pursuant to *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 470 (1992), and *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 914-15 (2001), the South Dakota choice-of-law provision is enforceable because:  (i) South Dakota has a substantial relationship to the parties and the transaction (i.e., Citibank is located in South Dakota); and (ii) South Dakota law is not contrary to any fundamental public policy of California.  *See Yaqub,* No. CV11-2190-VBF (FFMx), slip op. at 3-4 ("The South Dakota choice-of-law provision is enforceable …..") (*See* RJN, Ex. B); *Lowman*, 2006 WL 6108680, *3..

the card issuer with reference to any accepted credit card, and any charges made with the authorization of the primary card holder.

S.D. Codified Laws § 54-11-9; *see* Barnette Decl., Ex. 1, p. 2 ("This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your card."). Here, there is no dispute that Daugherty used the Account and, therefore, assented to the terms of the Card Agreement, including the Arbitration Agreement. *See* Complaint at ¶ 15 (alleging "Plaintiff entered into a written payment plan with Citibank, to pay $94.00 per month on **his delinquent Sears credit card**.")(emphasis added); *see also* Barnette Decl., ¶ 5, Ex. 2 (providing copies of billing statements reflecting Plaintiff's use of the Account from October 18, 2006 through December 18, 2006). Thus, there is no dispute that the Account, and therefore this dispute, is subject to the Arbitration Agreement. *See Yaqub*, No. CV11-2190-VBF (FFMx), slip op. at 3 ("Applying South Dakota law, Plaintiff entered into the Arbitration Agreement when he used the credit card.") (*See* RJN, Ex. B); *Lowman*, 2006 WL 6108680, *3 (same).

The Arbitration Agreement is valid under South Dakota law. South Dakota, like most states, strongly endorses arbitration as an alternative method to resolving disputes. The South Dakota Supreme Court has instructed that, "[i]f there is doubt whether a case should be resolved by traditional judicial means or by arbitration, arbitration will prevail." *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 814 (S.D. 2002) ("We have consistently favored the resolution of disputes by arbitration. … There is an overriding policy favoring arbitration when a contract provides for it."); *Dinsmore*, 593 N.W.2d at 44-45, 47 (enforcing arbitration agreement in preprinted securities account agreement, even though the parties had expressly agreed to delete an arbitration provision in an earlier agreement and the defendant did not call the arbitration agreement to its customer's attention). This "overriding" public policy also is confirmed in the South Dakota Attorney General Opinion:

DAUGHERTY V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL. (CASE NO. C 11-01285-SBA)
CITIBANK'S MOTION TO COMPEL ARBITRATION; MEMO IN SUPPORT

1

2

3

4

5

6

> "The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings." *Tjeerdsma v. Global Steel Bldgs., Inc.*, 466 N.W.2d 643 (S.D. 1991), quoting *L.R. Foy Constr. Co. v. Spearfish School District*, 341 N.W.2d 383, 388 (S.D. 1983) (Henderson, J., specially concurring) (citations omitted). South Dakota law, like federal law and the law of most states, encourages private parties to resolve both existing and future disputes by extra-judicial means such as arbitration. "A strong policy exists favoring the arbitration of disputes where the parties have bargained for this procedure." *Hot Springs v. Gunderson's, Inc.*, 322 N.W.2d 8 (S.D. 1982).

7

South Dakota Attorney General Opinion at 2. *See* RJN, Ex. C.

8

9

10

11

The Arbitration Agreement expressly permits either party to elect mandatory, binding arbitration for any claim, dispute, or controversy between the parties, and Citibank properly choose to do so. Accordingly, this Court should enforce the Arbitration Agreement here.

12

13

### 3.   Plaintiff's Claims Fall Squarely Within The Scope Of The Arbitration Agreement

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Once it is determined that the parties have a binding arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)*; see also McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (noting the distinction between "broad" clauses that purport to refer to arbitration all disputes arising out of a contract and "narrow" clauses that limit arbitration to specific types of disputes). Where the clause is broad, as is the case here, there is a heightened presumption of arbitrability such that "[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Tech.*, 475 U.S. at 650; *accord Fleet Tire Serv. v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997); *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58

28

1    F.3d 16, 20 (2d Cir. 1995) (holding that, where the clause is broad, "then there is a

2    presumption that the claims are arbitrable").

3         Here, the Arbitration Agreement extends to "[a]ll Claims relating to your

4    account, a prior related account, or our relationship,"  which "includes Claims based

5    on contract, tort (including intentional tort), fraud, agency, your or our negligence,

6    statutory or regulatory provisions, or any other sources of law . . . ."  Barnette Decl.,

7    Ex. 1, p. 11.   The Arbitration Agreement plainly covers Daugherty's claims, which

8    challenge Citibank's alleged conduct relating to collecting the Account.  These

9    claims clearly "relate to" Daugherty's Account and his relationship with Citibank,

10   and are therefore squarely covered by the Arbitration Agreement.  *See Becker*

11   *Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 46 (3rd Cir. Pa.

12   1978) (arbitration agreement including phrase "arising out of and about"

13   encompasses matters that "[arise] in the course of and during the on-going

14   relationship … created and governed…" by the contract containing the arbitration

15   provision).

16        Similarly, all of Plaintiff's legal theories fall within the scope of the

17   Arbitration Agreement.  Plaintiff's statutory claims for supposed violations of the

18   FCRA and Cal. Civ. Code § 1785.25, are explicitly covered by the Arbitration

19   Agreement, which encompasses all "includes Claims based on contract . . . statutory

20   or regulatory provisions, or any other sources of law . . . ."  Barnette Decl., Ex. 1

21   (under the heading "What Claims are subject to arbitration?").  Moreover, "[i]t is by

22   now clear that statutory claims may be the subject of an arbitration."  *Gilmer v.*

23   *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Mitsubishi Motors Corp. v.*

24   *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) (noting that, in agreeing to

25   arbitrate a statutory claim, a party "does not forgo the substantive rights afforded by

26   the statute [but] submits to their resolution in an arbitral . . . forum"); *see also Lozano*

27   *v. AT&T Wireless Srvs., Inc.*, 504 F.3d 718, 725 (9th Cir. 2007) (recognizing that the

28

DAUGHERTY V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL. (CASE NO. C 11-01285-SBA)
CITIBANK'S MOTION TO COMPEL ARBITRATION; MEMO IN SUPPORT

1    FAA "provides no basis for disfavoring agreements to arbitrate statutory claims by

2    skewing the otherwise hospitable inquiry into arbitrability") (citation omitted).

3    Importantly, the "duty [of the courts] to enforce arbitration agreements is not

4    diminished when a party bound by an agreement raises a claim founded on statutory

5    rights." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  Thus,

6    pursuant to well-settled authority, Plaintiff's statutory claims must be arbitrated.

7         Accordingly, pursuant to the express terms of the Arbitration Agreement,

8    Daugherty's claims against Citibank are subject to binding arbitration.

9         **B.    This Action Must Be Stayed As Against Citibank**

10        Section 3 of the FAA expressly provides that, when a party seeks a stay, the

11   "court . . ., upon being satisfied that the issue involved in such suit or proceeding is

12   referable to arbitration under such an agreement, *shall* on application of one of the

13   parties stay the trial of the action until such arbitration has been had in accordance

14   with the terms of the agreement."  9 U.S.C. § 3 (emphasis added); *see also*

15   *Countrywide Home Loans, Inc. v. Mortgage Guaranty Ins. Corp.*, __ F.3d __, 2011

16   WL 2373055, * 4 (9th Cir. Jun. 15, 2011) (citing Section 3 and noting that the

17   "express terms of [the FAA] do not allow a district court to abstain from granting

18   relief in cases where its jurisdiction is proper."); *Collins v. Burlington N. R. Co.*, 867

19   F.2d 542, 545 (9th Cir. 1989) (remanding case where district court failed to consider

20   whether a stay was appropriate as a result of binding arbitration agreement).

21   Accordingly, Citibank requests that this Court stay this action as against Citibank

22   pending completion of arbitration pursuant to the express terms of the Arbitration

23   Agreement.

24

25

26

27

28

DAUGHERTY V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL. (CASE NO. C 11-01285-SBA)
CITIBANK'S MOTION TO COMPEL ARBITRATION; MEMO IN SUPPORT

1

IV.   **CONCLUSION**

2        For all of the foregoing reasons, Citibank respectfully requests that the Court

3   grant this Motion and issue an Order compelling arbitration of Plaintiff's claims in

4   accordance with the express terms of the valid and enforceable Arbitration

5   Agreement governing the Account.  In addition, the Court should stay this action as

6   against Citibank pending completion of arbitration proceedings.

7

8

9   Dated:  August 19, 2011               SIMMONDS & NARITA, LLP
                                          TOMIO B. NARITA
10                                        R. TRAVIS CAMPBELL

11

12                                        By: /s/R. Travis Campbell
                                              R. Travis Campbell
13                                            Attorneys for Defendants
                                              Citibank, N.A., successor in
14                                            interest to Citibank (South
                                              Dakota), N.A.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAUGHERTY V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL. (CASE NO. C 11-01285-SBA)
CITIBANK'S MOTION TO COMPEL ARBITRATION; MEMO IN SUPPORT