UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BYRON D. DAUGHERTY,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; EQUIFAX INFORMATION SERVICES LLC; CITIBANK (SOUTH DAKOTA), N.A.; and DOES 1 through 30, inclusive,<br><br>　　　　Defendants. | Case No:  C 11-01285 SBA<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>Docket 23. |

The parties are presently before the Court on Defendant Citibank, N.A.'s ("Defendant")[1] motion to compel arbitration and stay action. Dkt. 23. Plaintiff Byron Daugherty ("Plaintiff") opposes the motion. Dkt. 37. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion to compel arbitration and stay action. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

///

///

---

[1] Citibank, N.A. is the successor in interest to the named Defendant Citibank (South Dakota), N.A.

# I. BACKGROUND

## A. Factual Summary

In 1998, Plaintiff opened a credit card account with Sears National Bank ("Sears"). Pl.'s Decl. ¶ 2, Dkt. 37-1. Plaintiff's credit card account was subject to a written credit card agreement, which included provisions that permitted Sears to change the terms of Plaintiff's account and to assign Plaintiff's account to another creditor. Pogwist Decl. ¶ 6, Exh. 1, Dkt. 44-2. The agreement, however, did not include an arbitration provision. Id., Exh. 1. In 1999, 2001, 2002, and 2003, Sears changed the terms of Plaintiff's credit card account by mailing him new credit card agreements. Id. ¶ 7, Exhs. 2-5. Each of these agreements contained a change of terms provision, an arbitration provision, and an assignment provision. Id., Exhs. 2-5.

In November 2003, Citibank USA, N.A. acquired the credit card accounts issued by Sears, including Plaintiff's account. Barnette Supp. Decl. ¶ 4, Dkt. 44-1. Citibank USA, N.A. subsequently merged into Citibank (South Dakota), N.A., which then merged into Citibank, N.A., i.e., Defendant. Id. In or about November 2003, Defendant mailed cardholders a written change-in-terms notice informing them of the change in ownership of the Sears Credit Card program ("2003 change-in-terms notice"). Id. ¶ 5, Exh. 3. The 2003 change-in-terms notice informed cardholders that Defendant was making certain changes to the cardholder agreement, including changes regarding binding arbitration of disputes and the law governing their credit card accounts. Id., Exh. 3. The notice advised cardholders to review the description of the changes and information regarding their right to reject the changes. Id.

As relevant here, the 2003 change-in-terms notice made the following changes to Plaintiff's credit card account. First, it provided that the "Governing Law" provision of the cardholder agreement is amended to read that "[t]he terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.'" Barnette Supp. Decl., Exh. 3. Second, the notice provided that the cardholder agreement is amended to include the following provision regarding binding arbitration:

**ARBITRATION:**

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

**Agreement to Arbitrate:**

Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered:**

· **What Claims are subject to Arbitration?** All Claims relating to your Account, a prior related Account, our relationship or your relationship with Sears are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. . . .

Id.

Third, the notice provided that the "Change of Terms" provision was amended to read that Defendant may change the cardholder agreement at any time and such changes are binding, unless the cardholder notifies Defendant in writing within 25 days after the effective date of the change that the cardholder does not agree to abide by the change and pays the total balance, either at once or under the terms of the unchanged agreement. Barnette Supp. Decl., Exh. 3. This provision also provided that use of the card after the effective date of the change shall be deemed acceptance, even if the 25 days have not expired. Id. Though Plaintiff had the option to reject the changes described in the 2003 change-in-terms notice, he did not do so. Id. ¶¶ 6-7.

On September 12, 2006, Defendant notified Plaintiff by mail of changes made to the terms governing his account ("2006 cardholder agreement"). Barnette Decl. ¶ 4, Exh. 1;

Barnette Supp. Decl. ¶ 8, Exh. 4.  The 2006 cardholder agreement provided that the agreement is binding on a cardholder unless the cardholder cancels their account within 30 days after receiving the card and the cardholder has not used the account.  Barnette Decl., Exh. 1.  Notably, this agreement contains an arbitration provision that is similar to the arbitration provision contained in the 2003 change-in-terms notice.  Id.  It also includes a choice-of-law provision stating that the terms and enforcement of the agreement are governed by federal law and the law of South Dakota.  Id.

On November 19, 2006, Defendant received a letter from Plaintiff requesting that his account be cancelled.  Barnette Supp. Decl. ¶ 11.  In June 2007, Plaintiff entered into a written payment plan with Defendant to make monthly payments to satisfy his delinquent account.  Compl. ¶ 15, Dkt. 1.

In 2008, Plaintiff discovered that Defendant was reporting Plaintiff as delinquent to several credit reporting agencies, including Experian Information Services, Inc. ("Experian"), Trans Union LLC ("Trans Union"), and Equifax Information Services LLC ("Equifax").  Compl. ¶ 18.  In 2009, Plaintiff discovered that Equifax was falsely reporting his account with Defendant as "Account Included in Bankruptcy," "Bankruptcy Chapter 7," and "Bankruptcy Discharged," when in fact the account had not been discharged in bankruptcy.  Id. ¶ 19.  On numerous occasions in 2008, 2009, and 2010, Plaintiff disputed the accuracy of the credit reporting with Experian, Trans Union, and Equifax, but they failed to conduct the investigations and make corrections as required by law.  Id. ¶¶ 20-21.  Plaintiff claims that Defendant received his disputes from the credit reporting agencies, but failed to conduct investigations and make corrections required by law.  Id. ¶ 22.  Plaintiff also claims that he notified Defendant on numerous occasions that Defendant was inaccurately reporting his account, but Defendant failed to conduct a proper investigation as required by law.  Id. ¶ 23.  According to Plaintiff, as a result of the inaccurate reporting of his accounts and failed reinvestigations, he has been denied credit, obtained credit at a higher cost, and has abstained from applying for credit.  Id. ¶ 25.

///

### B. Procedural History

On March 16, 2011, Plaintiff filed the instant action against Experian, Trans Union, Equifax, and Defendant. See id. Through this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorney's fees pursuant to the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and the California State Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1-1785.36. Id. ¶ 3. Plaintiff generally alleges that Experian, Trans Union, and Equifax willfully and negligently failed to establish or follow reasonable procedures to ensure accuracy in the preparation of credit reports and credit files they published and maintained concerning Plaintiff, and to conduct a reasonable investigation into Plaintiff's disputes regarding Defendant's credit reporting. See id. ¶¶ 26-41. Plaintiff further alleges that Defendant failed to properly investigate Plaintiff's dispute with respect to his account, to delete, modify or block information disputed by Plaintiff, to correctly report the results of an accurate investigation to credit reporting agencies, to refrain from publishing disputed account information, and to conform to a standard of conduct in assembling, evaluating, and disbursing consumer credit information about Plaintiff to third parties. See id. ¶¶ 42-58.

On August 19, 2011, Defendant moved to compel arbitration on the ground that Plaintiff is bound by the arbitration provision contained in the 2006 cardholder agreement. Def.'s Mtn. at 8-12, Dkt. 23. Additionally, Defendant requests that this Court stay the instant action pending the outcome of the arbitration proceedings. Id. at 12. On October 14, 2011, Plaintiff filed an opposition. A reply was filed on December 2, 2011. Dkt. 44.

## II. DISCUSSION

### A. Judicial Notice

In connection with its motion to compel arbitration and stay action, Defendant submitted a Request for Judicial Notice, asking the Court to take judicial notice of two California district court cases and an opinion letter from the South Dakota Attorney General's Office. Def.'s Request for Judicial Notice, Dkt. 24. A court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known

within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed.R.Civ.P. 201(b).

Because the Court may consider the district court cases without taking judicial notice of them, the Court DENIES Defendant's request to take judicial notice of these cases. See Taylor v. Pinnacle Credit Serv's, LLC, 2011 WL 1303430, at *5 n. 3 (N.D. Cal. 2011). The Court, however, GRANTS Defendant's request to take judicial notice of a document entitled "Opinion of Attorney General" dated May 7, 2002. The opinions of State Attorney Generals are judicially noticeable. Central Delta Water Agency v. U.S. Fish and Wildlife Service, 653 F.Supp.2d 1066, 1079 (E.D. Cal. 2009).

### B.     Federal Arbitration Act

Under the Federal Arbitration Act ("FAA"), any party bound by an arbitration agreement that falls within the scope of the FAA may bring a petition in federal district court to compel arbitration in the manner provided for in the agreement. 9 U.S.C. § 4. When faced with a petition to compel arbitration, the district court's role is a discrete and narrow one. "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.' " Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)) (emphasis added). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Chiron, 207 F.3d at 1130 (citations omitted).

An arbitration agreement governed by the FAA is presumed to be valid and enforceable. See Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226-227, (1987). The party resisting arbitration bears the burden of showing that the arbitration agreement is

invalid or does not encompass the claims at issue. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92 (2000).

### C. Motion to Compel Arbitration

Defendant moves to compel arbitration based on the arbitration provision contained in the 2006 cardholder agreement. Because Plaintiff does not dispute Defendant's contention that the arbitration provision contained in this agreement encompasses the claims pled in the complaint,[2] the central question before the Court under Chiron is whether the arbitration clause is valid. To determine whether a valid arbitration clause exists, it is first necessary to determine the substantive law that applies.

#### 1. Choice-of-Law

As an initial matter, the Court must decide whether South Dakota is the applicable substantive law. Defendant contends that South Dakota law applies based on the application of California's choice-of-law rules. Plaintiff does not dispute Defendant's contention.

Although the general rule is "that a federal court sitting in diversity applies the conflict-of-law rules of the state in which it sits," Schoenberg v. Exportadora de Sal, S.A. de C.V., 930 F.2d 777, 782 (9th Cir. 1991), jurisdiction in this case is based on federal question,[3] not diversity. Therefore, federal common law applies to the choice-of-law rule determination. See id.; Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006) (where jurisdiction is not based on diversity of citizenship, federal common law

---

[2] Although Plaintiff does not challenge Defendant's contention that the arbitration provision in the 2006 cardholder agreement encompasses Plaintiff's claims, the Court nonetheless finds that the dispute between Plaintiff and Defendant falls within the scope of the parties' agreement to arbitrate. The parties' arbitration provision contains broad language: "All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision." Barnette Decl., Exh. 1. In general, Plaintiff's claims against Defendant arises out of credit reporting related to Plaintiff's credit card account. Thus, it is clear that the parties' dispute "relates" to Plaintiff's account with Defendant.

[3] The Complaint alleges that jurisdiction is conferred by the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. See Compl. ¶¶ 1, 3.

choice-of-law rules apply). Federal common law follows the approach of the Restatement (Second) of Conflict of Laws. Huynh, 465 F.3d at 997.

Under the Restatement, the parties' choice-of-law "to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflicts of Laws § 187(1) (1988). Even if the parties could not have directed a contractual provision to the issue, courts should honor their choice unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue" and that state would be the state of the applicable law in the absence of an effective choice-of-law by the parties. Id. at § 187(2).

Here, the parties specifically agreed that disputes would be governed by federal law and the law of South Dakota. The 2003 change-in-terms notice and the 2006 cardholder agreement both contain a choice-of-law provision stating: "[t]he terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota." Barnette Decl., Exh. 1. Further, as Defendant is located in South Dakota, South Dakota has a "substantial relationship" with Defendant, justifying the choice of South Dakota law. See Nedlloyd Lines B.V. v. Superior Court, 3 Cal.4th 459, 467 (1992) (a substantial relationship is present when one of the parties is domiciled in the chosen state).[4] Plaintiff has not argued, let alone established that South Dakota law is contrary to a fundamental policy of a state (e.g., California) that would be the state of the applicable law in the absence of an effective choice-of-law by the parties. Accordingly, the Court will apply South Dakota law to resolve the question of whether the arbitration provision is valid.

---

[4] In determining the enforceability of contractual choice-of-law provisions, California courts apply the principles set forth in Restatement (Second) Conflict of Laws § 187. Nedlloyd, 3 Cal.4th at 464-465.

### 2.	Validity of the Arbitration Agreement

Plaintiff contends that the motion to compel arbitration should be denied because a valid agreement to arbitrate does not exist. Specifically, Plaintiff argues that his claims are not subject to binding arbitration for two reasons: (1) Defendant's amendment of terms through the mailing of the 2006 cardholder agreement was ineffective because Defendant has not proffered adequate evidence that it had the right to unilaterally amend the terms of the credit card agreement in effect at the time of the purported amendment; and (2) Plaintiff rejected the 2006 cardholder agreement, including the arbitration provision contained therein, by cancelling his account before the agreement became effective. Pl.'s Opp. at 4-6. Plaintiff does not otherwise challenge the validity of the arbitration clause. The Court will address Plaintiff's arguments in turn.

#### a.	Defendant's Right to Amend the Terms of Plaintiff's Credit Card Account

In support of his argument that his claims are not subject to binding arbitration because Defendant did not reserve the right to amend the terms of his credit card account to include the arbitration provision, Plaintiff cites South Dakota Codified Laws § 54-11-10. This statute provides, in relevant part:

> Upon written notice, a credit card issuer may change the terms of any credit card agreement, if such right of amendment has been reserved, regardless of whether the card holder can use the card for new purchases.

S.D. Codified Laws § 54-11-10.

Here, contrary to Plaintiff's contention, Defendant expressly reserved its right to change the terms of the credit card agreement. The evidence in the record demonstrates that the cardholder agreements governing Plaintiff's credit card account since 1998 have all contained a change of terms provision. As relevant here, the 2003 change-in-terms notice expressly reserved the right of amendment. The notice states, in relevant part, that Defendant may change the cardholder agreement at any time and the changes are binding, unless the cardholder notifies Defendant in writing within 25 days after the effective date of the change that the cardholder does not agree to abide by the changes. Barnette Supp.

- 9 -

1
2
3
4
5

Decl., Exh. 3.  Thus, Defendant had the right to, and did, change the terms of Plaintiff's credit card account when it mailed Plaintiff the 2006 cardholder agreement in September 2006.  Accordingly, Plaintiff failed to demonstrate that the arbitration provision in the 2006 cardholder agreement is invalid on the ground that Defendant did not have the right to change the terms of Plaintiff's credit card agreement.

### b.    Plaintiff's Cancellation of his Account

Plaintiff contends that the arbitration provision contained in the 2006 cardholder agreement is not binding because he cancelled his account before the agreement became effective.  In support of his position, Plaintiff cites South Dakota Codified Laws § 54-11-10, which provides, in relevant part:

> Any . . . change to the credit card agreement modifying the manner in which the issuer and card holder resolve disputes arising out of their relationship do not become binding on the parties if the card holder, within twenty-five days of the effective date of the change, furnishes written notice to the issuer, at the address designated by the issuer, that the card holder does not agree to abide by such changes.

Here, the evidence in the record indicates that the 2006 cardholder agreement was mailed to Plaintiff on September 12, 2006, and specifically states: "[t]his Agreement is binding on you unless you cancel your account within 30 days after receiving the card." See Barnette Supp. Decl. ¶ 8, Exh. 4.  The evidence in the record further indicates that Plaintiff did not send a letter cancelling his account until November 16, 2006 – sixty-five (65) days after Defendant mailed the 2006 cardholder agreement.  Id. ¶ 11, Exh. 5; Pl.'s Decl. Ex. A.  Plaintiff, for his part, speculates that "[i]f in fact the 'Card Agreement' was sent to Plaintiff after September 2006, his letter canceling may have effectively disclaimed the 'Card Agreement,' and the arbitration agreement along with it."  Pl.'s Opp. at 5.

Although it is unclear when Plaintiff actually received the 2006 cardholder agreement, the Court presumes that it was received by Plaintiff in the usual time.  See Schikore v. Bank of America Supplemental Ret. Plan, 269 F.3d 956, 961 (9th Cir. 2001) ("The mailbox rule provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual

time."). Plaintiff did not offer any evidence to rebut the presumption raised by the mailbox rule. Thus, Plaintiff is deemed to have received 2006 cardholder agreement shortly after it was mailed on September 12, 2006. Because Plaintiff's letter cancelling his account was mailed more than 30 days later on November 16, 2006, Plaintiff did not cancel his account before the 2006 cardholder agreement became effective. Accordingly, Plaintiff failed to demonstrate that the arbitration clause in the 2006 cardholder agreement is invalid on ground that he cancelled his credit card account before the agreement became effective.[5]

In sum, because a valid arbitration agreement exists, and because the arbitration agreement encompasses the dispute between Plaintiff and Defendant, the Court directs the parties to arbitration. Accordingly, Defendant's motion to compel arbitration is GRANTED.

### D. Motion to Stay Proceedings

Defendant has moved for a stay of this action until the arbitration proceeding is completed. The FAA provides that when a court is satisfied that issues involved in a lawsuit are referable to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Thus, the FAA "requires that the court stay judicial proceedings until the matter has been arbitrated according to the terms of the arbitration agreement." Leicht v. Bateman Eichler, Hill Richards, Inc., 848 F.2d 130, 133 (9th Cir. 1988). In light of the Court's conclusion that arbitration is warranted, Defendant's request to stay the instant action pending arbitration is GRANTED.

## III. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT:

1. Defendant's motion to compel arbitration is GRANTED.

---

[5] The Court notes that even assuming that Plaintiff could demonstrate that the 2006 cardholder agreement is not binding on him, he would still be bound by the terms of the 2003 change-in-terms notice, which contains an arbitration provision that is similar in all relevant respects to the arbitration provision in the 2006 cardholder agreement.

2. Defendant's motion to stay proceedings is GRANTED. This action is stayed pending arbitration. Defendant is required to file quarterly reports with the Court on the status of the arbitration proceedings beginning on June 8, 2012.

3. This Order terminates Docket 23.

IT IS SO ORDERED.

Dated: 3/8/12

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge